In the Matter of WILLIAM H. BIRMINGHAM, Petitioner, against ERNEST W. MIRRINGTON, JR., et al., as Members of the City Council of the City of Niagara Falls, et al., Respondents.

Supreme Court, Niagara County, June 22, 1953.

*A. Russell Leone* for petitioner.

*Clarence W. Greenwald, Corporation Counsel (Ralph A. Boniello* of counsel), for respondents.

SAMUEL J. HARRIS, Official Referee. By petition dated January 5, 1953, the petitioner has brought a proceeding under the provisions of article 78 of the Civil Practice Act for an order directing the respondents to continue the petitioner on the payroll of the City of Niagara Falls and to pay him certain amounts of money which he claims as back salary by reasons of the requirements of section 207-a of the General Municipal Law of the State of New York. The petition contains a further request for " such other and further relief as is just and proper ".

This proceeding has been referred to me to hear and determine.

The City of Niagara Falls is of less than 1,000,000 population and at the times concerned herein has had no pension fund.

On March 1, 1917, the petitioner was appointed as a fireman in the city fire department of Niagara Falls, New York, and subsequently was advanced to the rank of captain, which rank he held when on June 22, 1942, while engaged in his duties, he sustained certain accidental injuries which rendered him permanently and totally disabled for regular duty as a member of the fire department. At the time of the occurrence of the injuries his salary was at the rate of $2,830 per annum. Subsequent to the petitioner becoming permanently disabled the salary for the rank which he occupied at the time of his injuries has been increased from time to time. After his injuries occurred, the petitioner performed some light duties at irregular times around the firehouse until March 1, 1943; since that time he has been unable to and has not performed any work of remunerative value. At the time when he received his injuries he was approximately forty-four years of age. There has been no question raised as to his being permanently disabled or that such permanent disability came from injuries received by accident during his employment as a member of the fire department. Subsequent to receiving such injuries he was declared permanently disabled by the Workmen's Compensation Commission and awarded then the sum of $28 per week, which sum was subsequently reduced to the sum of $25 per week on June 1, 1947, which amount he is now drawing from the Workmen's Compensation Fund. Up to August 15, 1945, the petitioner was paid the full amount of his salary by the City of Niagara Falls but the city claimed and received from the Workmen's Compensation Commission his weekly award as reimbursement to the city on the payment of such salary. A final award was made for compensation on March 8, 1945. At about that time the city comptroller of the City of Niagara Falls requested petitioner to file his application for accidental disability retirement under section 65 of the Civil Service Law but petitioner refused so to do. In January, 1945, without notice to and without the consent of the petitioner, the chief engineer, who is the head of the Niagara Falls bureau of fire, prepared and filed with the State Retirement System, under section 65 of the Civil Service Law, an application for the retirement of petitioner due to his disability. The application was dated January 24, 1945, and subsequently thereto petitioner was requested by the Niagara Falls health officer to appear for a medical examination as to his physical

condition. He refused to have such examination made, or used, for the purpose of any retirement under section 65 of the Civil Service Law but being compelled under section 207-a of the General Municipal Law to undergo such examination to establish continued service disability, he did consent to such an examination with the distinct statement on his part that such examination was solely in compliance with the provisions of the General Municipal Law and not to be used by the city authorities in the application of the head of the fire bureau for the retirement of the petitioner under section 65 of the Civil Service Law.

The State Retirement System proceeded on the application of the fire bureau and retired the petitioner against his wishes. Subsequently petitioner was informed by the State Retirement System that it was necessary that he make a choice of options as to his retirement pay and he chose (again protesting) an option that would pay him a certain amount of retirement pay and continue payments after his death to his wife. As, of that time and from then on he was being paid by the Workmen's Compensation Fund the sum of $25 per week which per annum was larger than the amount he would receive under the provisions of the State Retirement System, he has not received at any time any money from the State Retirement System.

By letter dated August 9, 1945, from the State Comptroller, the city authorities of Niagara Falls were notified to remove petitioner's name from the payroll after August 14, 1945. The claim of the State authorities was he was no longer in the service of the city and so was not entitled to be on the city payroll. Petitioner protested this ruling to the State Comptroller and to the city authorities. Despite these directions from the State authorities, the city authorities continued to pay to the petitioner certain moneys, being the difference between the base pay and the Workmen's Compensation Fund amount and certain other pay from the city until February 1, 1953, when petitioner was notified by the city authorities of Niagara Falls that he would no longer receive any payments from the city by virtue of the provisions of section 207-a of the General Municipal Law and that his name was being removed from the payroll of the city as of that day. The authorities of the City of Niagara Falls took such action of removing his name from the payroll by direction of the Department of Audit and Control of the State of New York, which then claimed the payments to be illegal by reason of a decision of the Supreme

Court of the State of New York (Steuben County) by Mr. Justice VAN DUSER (*Matter of Robinson* v. *Cole,* 193 Misc. 717). (See, also, *Matter of Tyler* v. *Gadwood,* 279 App. Div. 1138.) The basis of the decision by Mr. Justice VAN DUSER at Special Term in the *Robinson* case and the subsequent direction of the State Comptroller, is that petitioner having been retired under the provisions of section 65 of the Civil Service Law, he was to be no longer regarded as an employee of the City of Niagara Falls and therefore, not to be regarded as entitled to benefits under the provisions of section 207-a of the General Municipal Law.

Previous to bringing this present proceeding and prior to August 18, 1952, petitioner brought an action against the City of Niagara Falls for the moneys which he claimed to be due to him to that date by virtue of the provisions of section 207-a of the General Municipal Law. At the time of the hearing of this proceeding such action was at issue but the trial of the same was held in abeyance by the consent of the parties pend-ing this proceeding.

In disposing of this proceeding on the merits, it is necessary to consider the contents of section 207-a of the General Municipal Law and certain provisions of the Civil Service Law having to do with the State Retirement Fund and its benefits. At the time of the injuries to the petitioner, which resulted in his permanent physical disability, section 207-a of the General Municipal Law provided as follows: (§ 207. *Hospitalization of members of fire departments in certain cities.* Formerly § 206-a, renum. by L. 1941, ch. 15, § 1, eff. Feb. 17, 1941. Former § 207 renum. § 206-a.) " § 207-a. *Payment of salary, medical and hospital expenses of firemen with injuries or illness incurred in performance of duties.* Any fireman in a city of less than one million population, or town or village having a paid fire department, who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful reme-dial treatment, shall be paid by the municipality in which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addi-tion, said municipality shall be liable for all medical treatment and hospital care furnished during such disability. Provided, however, and notwithstanding the foregoing provisions of this section, the municipal health authorities or any physician appointed for the purpose, may attend any such injured or sick fireman from time to time, for the purpose of providing

medical, surgical or other treatment, or for making inspections, and the municipality shall not be liable for salary or wages payable to such a fireman, or for the cost of medical or hospital care or treatment furnished, after such date as the health authorities or such physician shall certify that such injured or sick fireman has recovered and is physically able to perform his regular duties in the department. Any injured or sick fireman who shall refuse to accept such medical treatment or shall refuse to permit medical inspections as herein authorized, shall be deemed to have waived his rights under this section in respect to medical expenses incurred or salary or wages payable after such refusal.''

Originally this section was a part of the unconsolidated laws of the State, being chapter 562 of the Laws of 1938, effective April 7, 1938, and the enactment of the section 207-a was added to that portion of the consolidated laws entitled '' General Municipal Law '' by legislative action, chapter 15 of the Laws of 1941, effective February 17, 1941. The object of this addition to the consolidated laws was to codify the statute of 1938. From time to time since the injuries to petitioner section 207-a has been amended by legislative action, the latest of such amendments being by chapter 812 of the Laws of 1951.

The conclusion must be reached that the above-quoted section 207-a of the General Municipal Law and its predecessor in the Laws of 1938, were adopted as a matter of public policy to protect both the city and the fireman himself.

By chapter 891 of the Laws of 1942, effective May 18, 1942, membership in the State Retirement Fund became compulsory for all firemen employed in cities which did not maintain a local pension fund. The petitioner herein is included within the provision of this statute.

It is to be noted that the injuries from which the petitioner suffered permanent disability occurred on June 22, 1942. At the time that petitioner entered the employ of the City of Niagara Falls as a fireman and all the times subsequent thereto, the Civil Service Law (State Retirement Fund) contained section 65, which at the time of the injuries to the petitioner read as follows:

'' § 65. *Accidental disability retirement.* Medical examination of a member under sixty years of age in service for accident disability and investigation of all statements and certifications by him or on his behalf in connection therewith shall be made upon the application of the head of the department in which said member is employed, or upon the application of said

member or a person acting in his behalf stating that said member is physically or mentally incapacitated for the performance of duty as a natural and proximate result of an accident sustained in service as a member and certifying the time, place and conditions of such service performed by said member resulting in such alleged disability, and that such alleged disability, was not the result of willful negligence on the part of said member and that said member should therefore be retired. No such application shall be valid or acted upon unless a report, in a form acceptable to the comptroller of the accident is filed in the office of the retirement system within thirty days next following the date of the accident, except that, if the notice is filed with the industrial commissioner as required by the provisions of the workmen's compensation law, or if the medical board and the comptroller shall agree that for some sufficient reason notice could not have been given, such notice shall be waived for a reasonable period. If such medical examination and investigation show that the said member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accidental injury received in such service while a member and that such disability was not the result of willful negligence on the part of said member and that such member should be retired, the medical board shall so certify to the comptroller, stating the time, place and conditions of such service performed by said member resulting in such disability and the comptroller shall retire the said member for accident disability within ninety days after the execution and filing of application therefor with the comptroller or such other day as may be approved by the comptroller.

"Upon retirement for accident disability a member shall receive a retirement allowance which shall consist of (1) an annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement, and (2) a pension in addition to the annuity, of three-quarters of his final average salary."

The position of the respondents in defending this proceeding and opposing the prayer of the petitioner is as has been indicated above based on the thought that retirement by the Retirement System *ipso facto* deprived the petitioner and those in like circumstances from the benefits accruing under section 207-a of the General Municipal Law in payments thereunder. (See *Matter of Robinson* v. *Cole,* 193 Misc. 717; See, also, 6 Op. St. Comptroller, 1950, p. 374.) I do not deem that a

sufficient answer to the claim of the petitioner because of the purposes of the act (General Municipal Law, § 207-a) as shown by its contents. By the enactment of that section of the General Municipal Law the petitioner and those in like situations became entitled to its protection in the event of accidental disability or injury, temporary or permanent. The statute does not in any way restrict the right of the petitioner as to pay nor define a time limit thereto and must be construed as meaning, that after the occurrence of such injury, the employee so injured is to be paid the amount of his salary until he has recovered from the effect of the injury, and in the event of permanent disability, then such payment is to continue throughout his life unless the Legislature changes the statute or the recipient waive, or consent to the abrogation of, the effect of the statute in his case.

There is no proof in this action that there was any such waiver or consent to the abrogation of his benefits by the petitioner. Although respondents lean upon what they claim were the effects of section 65 of the Civil Service Law, agreement cannot be had with such claim. The reason that this is said is as follows:

The provisions of the Civil Service Law which are now invoked by the respondents were in effect when chapter 562 of the Laws of 1938 and its successor statute, section 207-a of the General Municipal Law were adopted and it must be concluded, that the Legislature had in mind the provisions of the Civil Service Law when it enacted the statute, the protection of which the petitioner has invoked. Although the fact is that against his wishes or protest he has been made a present beneficiary of the State Retirement Law benefits, this does not mean that he has been retired in the sense that he may not draw his salary or wages under section 207-a of the General Municipal Law. Section 207-a of the General Municipal Law is a special statute recognized by the Legislature as recently as the amendment in 1951, and cannot be revoked except by another statute adopted in the light of constitutional provisions, which statute amends or repeals such section 207-a of the General Municipal Law or by enactment of a statute from the contents of which latter statute inference can be clearly drawn that the Legislature, in the exercise of its constitutional powers, intends to abrogate the provisions of section 207-a of the General Municipal Law. No such statute has been adopted.

It is apparent that the Legislature from time to time has made endeavors or taken steps to prevent the drawing of

double benefits by members of the State Retirement Fund or by those benefiting by the Workmen's Compensation Act (See Civil Service Law, § 93, formerly § 72; Civil Service Law § 67; L. 1929, ch. 421, § 8; L. 1935, ch. 451; L. 1945, ch. 714; L. 1949, ch. 736 [now § 85]; L. 1951, ch. 812.)

It is apparent on examination of the Civil Service Laws which have to do with the State Retirement System or provisions of the Workmen's Compensation Law, that the Legislature from time to time has endeavored to limit benefits in the nature of pensions to one fund but so far it has not fully carried out such plan, if it had such plan in mind. The right of the petitioner to receive his regular salary from the time of his injuries in this case has not been abrogated by any statute. The record shows that he has not consented to such an abrogation and has not waived the benefits of the statute.

My conclusion, therefore, is that the petitioner still remains entitled to his salary or wages under the provisions of section 207-a of the General Municipal Law. As to the amount of that salary petitioner argues that he is entitled to the successive raises given to those in the status or grades similar to his since the time of his injuries; with this I cannot agree because my deduction from the wording of the statute is that the amount that he is to draw is fixed as of the time of the receipt of his injuries. It is true that from the time of his injuries to the time of the cessation of his pay to him from the city various changes were made in the amounts paid to him but this does not, to my mind, void what was intended by the statute, that the salary or wage he is to draw is the amount that he was drawing to the point of the coming of disability. The context of the provisions of the Workmen's Compensation Law shows that the city had no right as a matter of law to receive on its own behalf the petitioner's compensation money or to pay him only the surplus of the salary or wage over the amount of compensation money which he took. However, petitioner would have no claim in reference to this because he clearly accepted such bargain and consented to it during the time that it was in effect.

In reference to the future rights of the petitioner and of the State Compensation Commission or the State Retirement System, such a question may not be passed on in the present proceeding because representatives of those two State authorities are not and neither of them is before the court in this proceeding.

The petitioner is entitled to have paid to him and to receive from the City of Niagara Falls his wages or salary from the time of the last payment by the city to him to the time of the beginning of this proceeding and in the future so long as there is no constitutional legislation enacted depriving him of that right or unless he, by his own act, forfeits such right.

The above may be regarded as my decision herein including findings of fact and conclusions of law, and an order may be submitted in accordance therewith.