Henry A. Hudson, J.
Tlie petitioner has instituted a proceeding under article 78 of the Civil Practice Act, first, for an order directing J. Neil Gokey, Commissioner of Public Safety for the City of Oswego and Frank Sayer, Chamberlain of the said city to pay to the petitioner compensation which would have been due him had he continued in his position as fireman in the City of Oswego from the 5th day of May, 1951 to the date of such order and secondly for an order reinstating and restoring the petitioner to the payroll of the City of Oswego as a city fire *649 man -with all of the rights and privileges to which he would have been entitled under his seniority rights based upon his original employment, July 16, 1932.
The matter was submitted to the court upon the petition, the answer and an answering affidavit of the attorney for the petitioner which in effect is a reply to the answer and the supporting affidavits of the parties. Upon the submission of the matter to the court it was stipulated that a prior proceeding conceded to have been instituted by the petitioner October 7, 1955, which had never been previously disposed of, should be considered by the court as the original petition herein thus fixing the date of the institution of this proceeding as October 7, 1955 and further stipulating that the notice and petition herein dated December 30,1957 and served January 30,1958 should be deemed an amended notice and petition superseding in its entirety the notice and petition served October 7, 1955. It was further stipulated that the notice and petition of October 7, 1955 should not be deemed any part of this proceeding or considered herein.
The facts relied upon by the petitioner and which form a background for the application are for the most part undisputed. It appears without contention that the petitioner, Harry Devens entered the employ of the City of Oswego as a fireman in the Fire Department July 16, 1932. He was then 39 years of age having been born November 23, 1892. He continued in his employment until February 21,1949 when he ceased work because of a disability sustained in the course of his employment on that day. He returned to work May 5, 1949 and continued therein until February 5, 1950. He did not report for work thereafter. On December 25,1949 he was promoted to the rank of lieutenant. He was a member of the New York State Employees’ Retirement System. On October 27, 1950, Leonard T. Gadwood, then Commissioner of Public Safety of the City of Oswego, New York, filed with the State Retirement System an application for the retirement of the petitioner for ordinary disability. This would have entitled the petitioner to a retirement allowance of not to exceed one quarter of his final average salary. Upon the suggestion of the State Retirement System a further application was filed by Mr. Gadwood for the retirement of the petitioner for accidental disability which would entitle the petitioner to a retirement allowance of three quarters of his final average salary. The State Retirement System on May 3, 1951, advised Mr. Gadwood that the application had been approved. The petitioner was removed from the payroll of the City of Oswego, May 5, 1951. He was advised by Mr. Gadwood May 9, 1951. The petitioner advised the State Comptroller in accordance with the *650 Comptroller’s written request, that his employment had been terminated May 5,1951. On May 25,1951 the petitioner advised the State Comptroller that he elected to take the maximum allowance without optional deduction. As a result thereof his retirement allowance was fixed at $2,206.16 per year. The approval of the application for the petitioner’s retirement was made on the ground that he had permanent, total disability. The petitioner also received an allowance and an award based upon a finding of permanent, total disability from the Workmen’s Compensation Board of the State of New York, such award being fixed at the rate of $32 per week. Under the provisions and requirements of the law, this amount is being paid to the State Comptroller for reimbursement to the State Retirement System for the payments made to the petitioner representing his retirement allowance. The petitioner received his full salary from the city to and including the 5th day of May, 1951. From May 5, 1951 to October 7, 1955 the petitioner made no claim against the City of Oswego for any other or further benefits and accepted the payments from the State Comptroller representing his retirement allowance. During this time he did engage in some employment for which he received compensation. The amount thereof is not stated. On October 7,1955, four years and five months after the effective date of his retirement, the petitioner instituted a proceeding against the City of Oswego claiming that he had been improperly retired and that he was entitled to the benefits provided by section 207-a of the General Municipal Law.
It is urged by the petitioner that under and pursuant to the terms and provisions of section 207-a of the General Municipal Law, he was entitled, as a paid fireman of the City of Oswego, New York, to be paid by the municipality the full amount of his regular salary until his disability arising from injuries sustained in the performance of his duties had ceased; that he had been informed officially that the City of Oswego had a right to terminate his employment and compel him to retire under the provisions of section 63 of the Retirement and Social Security Law, formerly section 79 of the Civil Service Law, and that it was by reason of a mistake of law upon his part that he accepted retirement May 5, 1951 and accepted the payments from the State Retirement System through the State Comptroller. He urges that this mistake of law was concurred in by the officials of the City of Oswego. The petitioner further contends that he did not make application for retirement but rather such application was filed pursuant to the provisions of section 79 of the Civil Service Law by the Commissioner of Public Safety who is, pursuant *651 to the provisions of snch section, head of the department in question, authorized to file such an application. Petitioner states that he had advised the Commissioner of Public Safety that he did not desire to retire and that the correspondence which passed back and forth between the petitioner and the State Comptroller clearly shows that the petitioner was .advised that he would have to accept retirement.
It is the contention of the respondents that the petitioner acquiesced in the making of the application for his retirement; that he corresponded with the Comptroller of the State of New York in connection therewith before such retirement became effective and that he continued to correspond with the Comptroller of the State of New York in connection therewith and with payments thereunder for some time after his retirement; that at no time until October 7, 1955 did the petitioner object to the action of the officials of the City of Oswego or the action of the Comptroller of the State of New York in respect to his retirement; that during that entire period of time he accepted the retirement payments without protest and that he thereby waived any right to object thereto and that as a result of his retirement he was removed May 5, 1951 from the payroll of the City of Oswego and ceased to be an employee thereof so that from that time forward he was not entitled to any of the benefits provided under section 207-a of the General Municipal Law. The respondents further contend that no payment has been made to the petitioner by the City of Oswego since May 5,1951; that it has at all times since October 7,1955 refused to pay any salary or provided any medical treatment or care and that under the provisions of section 1286 of the Civil Practice Act, the petitioner is barred from instituting this proceeding as more than four months had elapsed since the termination of the petitioner’s employment. The respondents further contend that the petitioner is guilty of laches which in equity should bar the maintenance of this proceeding and that as a result thereof a fireman was employed to take the place of petitioner upon the termination of his employment and that the rights given to the respondents under section 207-a of the General Municipal Law for medical inspections and treatment of the petitioner have been precluded.
Section 207-a of the General Municipal Law reads as follows:
“ Any paid fireman of a fire company or fire department of a city of less than one million population, or town, village or fire district, who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment, *652 shall be paid by the municipality or fire district by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition, such municipality or fire district shall be liable for all medical treatment and hospital care furnished during such disability. Provided, however, and notwithstanding the foregoing provisions of this section, the municipal health authorities or any physician appointed for the purpose by the municipality or fire district, may attend any such injured or sick fireman, from time to time, for the purpose of providing medical, surgical or other treatment, or for making inspections, and the municipality or fire district shall not be liable for salary or wages payable to such a fireman, or for the cost of medical or hospital care or treatment furnished, after such date as the health authorities or such physician shall certify that such injured or sick fireman has recovered and is physically able to perform his regular duties in the company or department. Any injured or sick fireman who shall refuse to accept such medical treatment or shall refuse to permit medical inspections as herein authorized, shall be deemed to have waived his rights under this section in respect to medical expenses incurred or salary or wages payable after such refusal.
“ Notwithstanding any provision of law contrary thereto contained herein or elsewhere, a cause of action shall accrue to the municipality or fire district aforesaid for reimbursement in such sum or sums actually paid as a salary or wages and/or for medical or hospital treatment, as against any third party against whom the fireman shall have a cause of action for the injuries sustained. ’ ’
Section 63 (subd. a, par. 2) of the Retirement and Social Security Law (formerly Civil Service Law, § 79) reads as follows:
“A member shall be entitled to an accidental disability retirement allowance if, at the time application therefor is filed, he is: * * *
‘ ‘ 2. Physically or mentally incapacitated for performance of duty as the natural and proximate result of an accident not caused by his own willful negligence sustained in such service and while actually a member of the retirement system. ’ ’
Subdivision b (pars. 1, 2, 3) read as follows:
‘ ‘ Application for an accidental disability retirement allowance for such a member may be made by:
‘ ‘ 1. Such member, or
‘ ‘ 2. The head of the department in which such member is employed, or
*653 “ 3. Some person acting on behalf of and authorized by such member.”
Section 207-a of the General Municipal Law is derived from chapter 562 of the Laws of 1938, as amended by chapter 15 of the Laws of 1941. Its effect was first considered in Matter of Robinson v. Cole (193 Misc. 717)'. In this case, a fireman in the City of Corning, New York was injured in the course of his employment. After his application for an award under the Workmen’s Compensation Act was denied, he applied pursuant to the provisions of section 65 (subsequently Civil Service Law, § 79), and presently section 63 of the Retirement and Social Security Law, for accidental disability retirement which was granted to him in March, 1945. Three years later he filed a notice of claim seeking the benefits of section 207-a of the General Municipal Law. His claim was rejected and he thereafter instituted a proceeding to obtain the benefits of section 207-a. The court held that if the petitioner’s status had not changed between the time of his injury and the institution of the present proceeding, he would be entitled to receive the benefits of section 207-a, namely, his full regular salary and such other benefits as now are provided in such section. However, the court held that by voluntarily applying for accidental disability retirement, the petitioner had severed his connection as an employee of the city, had been removed from the city payroll and was not entitled to any benefits pursuant to the provisions of section 207-a. It was pointed out that in addition to retiring the petitioner, after severing his connection with the Fire Department, had moved from the Village of Corning and took up his home some distance away. Justice Van Duser decided the Robinson case at Special Term. Subsequently in Matter of Birmingham v. Mirrington (284 App. Div. 721) Justice Van Duser, writing for a unanimous court, reviewed the determination in the Robinson case with approval in distinguishing the facts therein from those in the Birmingham case.
The section was next considered in Matter of Tyler v. Gadwood (195 Misc. 674). It should be noted that the respondent in the Tyler case was the Commissioner of Public Safety in the City of Oswego who made the application in the instant case for accidental disability retirement of the petitioner herein. The Tyler case was decided in April, 1949 and involved the accidental, permanent disability of a city fireman under temporary appointment. The petitioner in that case claimed to have sustained injuries in October, 1945 and additional injuries in the years 1945, 1946 and 1947. In October, 1947 he made application for the benefits provided by section 207-a of the General *654 Municipal Law and the then Commissioner of Public Safety on November 12, 1947 retired the petitioner pursuant to section 207-a upon full pay. He continued to receive his full salary until June, 1948 when the said Leonard T. Gadwood, the new Commissioner of Public Safety notified him that he was being dropped from the payroll and employment on the Fire Department. The court held that the claim of the city that the statute did not apply to temporary or substitute fireman was untenable; that the claim of the respondent that having discharged the petitioner he no longer was an employee and, therefore, was not entitled to payment was also untenable, and finally the claim of the respondent, that the petitioner should have applied for disability retirement was inapplicable, as temporary employees could not come within the provisions thereof; that there was no evidence of any waiver by the petitioner of his rights to the benefits under section 207-a and finally that section 207-a clearly was enacted for the purpose of benefiting firemen employed by a municipality who were disabled as the result of injuries sustained by them in the performance of their duties and that the section being remedial in its nature should be liberally construed in favor of those to be benefited. The court held that the petitioner was entitled to his full pay from the time of his discharge. The Appellate Division, Fourth Department, affirmed the determination of the Special Term (279 App. Div. 1138) to the extent that if the petitioner were found to have sustained injuries as the result of his employment, he was entitled to the benefits provided for under section 207-a of the General Municipal Law. The court, however, reversed the determination of the lower court for the reason that it found that certain questions of fact should be decided before a final order could be made determining the rights of the petitioner and remitted that matter to the Special Term for a determination of such questions of fact. The decision of the Appellate Division was handed down in May, 1952. It should be noted in passing that the Tyler case was determined by the Special Term just after the injury of the petitioner herein in 1949 and a year before the action taken by the respondent in that case in applying for accidental retirement benefits for the petitioner in this case. The termination of the employment of the petitioner in this case occurred one year before the determination of the Appellate Division upon the appeal. It is, therefore, apparent that the then Commissioner of Public Safety of the City of Oswego was fully aware and cognizant of the ruling of the Special Term that section 207-a of the General Municipal Law applied to a city fireman under the disability of the petitioner *655 herein and that the petitioner was, under the ruling of the court then in effect, entitled to the benefits of section 207-a.
The effect of section 207-a of the General Municipal Law was next considered in Matter of Robida v. Mirrington, (1 Misc 2d 968) in which a very similar situation to the one here under consideration arose. A city fireman, in the City of Niagara Falls, was injured in the course of his employment so that he was totally, permanently disabled. After receiving payment of salary under section 207-a, an arrangement was worked out between the fireman and the City of Niagara Falls that the fireman would apply for retirement under the provisions of section 65 of the Civil Service Law and that the city would pay to him the difference between the .amount he would receive on retirement and the amount due him as salary had he continued in the employ of the city. His employment was thereupon terminated and for eight years the city continued- to pay the difference between his retirement allowance and his former salary. He was in the meantime, of course, removed from the employment rolls of the city. The city upon ascertaining that it was improperly making the payment, terminated the same. The court held that the petitioner and the city had operated under a mistake of law and that under the provisions of section 112-f of the Civil Practice Act, petitioner was entitled to be reinstated as an employee and to receive his full salary pursuant to the provisions of section'207-a of the General Municipal Law.
The effect of section 207-a was next considered in Matter of Birmingham v. Mirrington (204 Misc 821) a fireman, again in the City of Niagara Falls sustained accidental injuries in the performance of his duties as the result of which he was rendered permanently and totally disabled. The head of the Fire Department, without petitioner’s consent, filed an application with the State Retirement System due to his disability. He was retired against his wishes and in fact opposed every step taken by the officials of the city and of the State to effect his retirement. The case, therefore, is identical with the present one with the exception that in the present case there was no specific objection upon the part of petitioner. The Official Referee who heard and determined the case, held that section 207-a entitled the petitioner to the benefits therein provided and that lie could not be retired against this wishes but was entitled to be paid the full amount of his salary as a city employee. The Official Referee also held that the petitioner was not entitled to increments to which he would have been entitled had he continued in the active employ of the city. Upon appeal to the *656 Appellate Division, Fourth Department (284 App. Div. 721), that court affirmed the holding of the Official Referee to the ■extent that the petitioner was entitled to his salary, but reversed the determination of the Official Referee limiting the petitioner to the salary he was receiving at the time of his disability and held that he was entitled to any increments which would accrue to him during the course of his employment the same as any ■other employee, following Matter of Barber v. Lupton (282 App. Div. 1008).
I am satisfied from an examination of the above authorities •that the petitioner in this case would be entitled to the benefits provided by section 207-a of the General Municipal Law and on May 5, 1951, the date that his service was terminated as a member of the Oswego Fire Department, would have been ■entitled to be retained upon the payroll of the City of Oswego and to have received his regular salary from that date until such time as his disability terminated. He would likewise have been entitled to any increment in salary to which other members ■of the department became entitled thereafter as long as he remained a member of the Oswego Fire Department.
Had the petitioner elected to do so he also would have been ■entitled to waive his rights under section 207-a of the G-eneral Municipal Law and to have applied, if he so desired, for the •accidental retirement benefits provided for under then section '79 of the Civil Service Law (now Retirement and Social Security Law, § 63). In either event any benefits which he had been ■allowed under the provisions of the Workmen’s Compensation Law would have been offset against either his retirement benefit •payable from the State Retirement Fund or his salary payable .by the City of Oswego as the case might be.
It is urged by the petitioner that he was specifically advised by the Commissioner of Public Safety that he was obliged to .accept retirement benefits and that the City of Oswego was ■entitled to apply for his retirement pursuant to the provisions ■of section 79 of the Civil Service Law; that he never personally .applied for retirement; that he had advised the Commissioner ■of Public Safety that he did not wish to retire; that he never signed the application for retirement and that he acquiesced in the action taken by the Commissioner of Public Safety and subsequently accepted retirement benefit payments without knowledge of his right of the benefits due under the provisions of •section 207-a of the General Municipal Law and without being .advised thereof. There is no dispute that the application for the petitioner’s retirement was made out and filed by the Commissioner of Public Safety pursuant to the provisions of para *657 graph 2 of subdivision b of section 79 of the Civil Service Law and that the petitioner did not sign the application form, although a place was contained thereon for his signature.
It is urged by the respondents that the petitioner waived any rights that he had to claim the benefits of section 207-a by corresponding with the Comptroller of the State of New York in respect to the payment of his retirement benefits and by accepting such benefits for a period of upwards of four and one-half years before making any claim to benefits pursuant to section 207-a.
It will be observed that a sharp question of fact exists as to whether the petitioner was advised by the Commissioner of Public Safety that he had to accept the benefits of the State retirement act which cannot be resolved from an examination of the affidavits presented to the court.
It is urged by the petitioner that both his action and the action of the officials of the City of Oswego resulted from a mistake of law and that by reason of the provisions of section 112-f of the Civil Practice Act, the court is authorized to allow a correction thereof.
In respect to the contentions of the respondents that the petitioner had waived his rights, it should be remembered that on May 5, 1951, the date on which Leonard T. Gadwood, Commissioner of Public Safety of the City of Oswego terminated the employment of the petitioner, the said Gadwood was the respondent in the action of Matter of Tyler v. Gadwood (195 Misc. 674, supra) which was on appeal in the Appellate Division and in which case the Special Term of the Supreme Court had ruled definitely that the provisions of section 207-a of the General Municipal Law applied to one in the position of the petitioner. In fairness to the petitioner, he should, it would seem, have been entitled to advice from his superior that the very substantial benefits of section 207-a as compared to those provided for under section 79 of the Civil Service Law were available to him. This is hardly a case where the Commissioner of Public Safety could say that he was ignorant of the law. It is very possible that the Commissioner of Public Safety felt that some rights of the City of Oswego might be adversely affected if the petitioner was acknowledged to have rights under section 207-a or he might have been advised that the law was otherwise than it previously had been decided by the Special Term and that such decision would be changed upon the appeal then pending. There is nothing in the moving papers or answering affidavits before the court which casts any light upon this possibility. If the action of the Commissioner of Public Safety was based upon *658 the belief that the determination of the Special Term in the Tyler case was erroneous, the subsequent affirmance in principle of the Tyler case (supra) by the Appellate Division and the determination in the Robida (1 Misc 2d 968, supra) and Birmingham (204 Misc. 821, supra) cases should have demonstrated the error and established to the Commissioner’s satisfaction that he had acted under a mistake of law. In view of the relationship between the petitioner and the respondents and the claim of the petitioner as to representations made to him relative to his obligation to accept retirement benefits, the petitioner also may well have been operating under a mistake of law. If this is the case, the petitioner could well come within the purview of the Bobida case. The court cannot determine this upon the papers presently before it.
The respondents further urge that the petitioner by accepting the benefits of retirement payments until October, 1955, is not now entitled to proceed under article 78 of the Civil Practice Act for the reason that section 1286 of the Civil Practice Act limits the right to proceed thereunder to a period of four months from the date of the determination complained of. It is the respondents’ contention that the determination complained of occurred when the petitioner’s employment was terminated May 5, 1951. It is the petitioner’s contention that a demand was not made for benefits to which he would be entitled under section 207-a until the time of the service of the petition upon the respondent in October, 1955 and that, therefore, section 1286 does not preclude his right to proceed under article 78. It is generally held that where the action complained of is illegal or improper, the wrong is a continuing one and the limitation of time does not commence to run until there has been a demand by the claimant for his rights and a refusal to grant the same. (Matter of Cash v. Bates, 301 N. Y. 258; Matter of Wilsey v. Johnson, 4 A D 2d 734; Matter of Stylemaster Dept. Store, 7 Misc 2d 207.) The courts have held that a demand under such circumstances must be made within a reasonable time. (Matter of Wilsey v. Johnson, supra.)
In the present case it is impossible to determine from the moving papers and affidavits whether the action of the Commissioner of Public Safety was improper or illegal or whether under all of the circumstances the petitioner waited more than a reasonable time before instituting the proceedings in 1955. In my opinion this can only be determined upon the presentation of further proof.
For the reasons stated above, I am satisfied that no determination can be made in this proceeding upon the moving papers *659 and supporting affidavits which are presently before me and that it will he necessary for the court to take proof for the purpose heretofore expressed in this memorandum. Such procedure would seem to be not only authorized but directed under the determination of the Appellate Division in Matter of Tyler v. Gadwood (279 App. Div. 1138, supra).
A hearing may, therefore, be scheduled by either party pursuant to the provisions of section 1295 of the Civil Practice Act, upon 10 days’ notice, before the court, either at the January Trial and Special Term of Supreme Court to be held in the County of Onondaga or the February Trial and Special Term of Supreme Court to be held in the County of Jefferson, New York.
Submit order.